The PEOPLE of the State of Colorado, Complainant,

v.

Denis John BLANCK, Attorney-Respondent.

No. 84SA324.

Supreme Court of Colorado, En Banc.

June 3, 1985.

Linda Donnelly, Disciplinary Prosecutor, George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Rotole, Owen, Jaunarajs & Walker, Dennis P. Walker, Denver, for respondent.

NEIGHBORS, Justice.

In this attorney discipline proceeding filed pursuant to C.R.C.P. 241.20, the Supreme Court Grievance Committee found that the respondent, Denis John Blanck, had violated the Code of Professional Responsibility. The Grievance Committee recommended that the respondent be suspended from the practice of law for 30 days and that he be assessed the costs of the proceedings. We approve the report of the Grievance Committee and concur in the recommendation of suspension.

## I.

### THE FINDINGS

In *People v. Gibbons*, 685 P.2d 168 (Colo.1984), we adopted the standard of review that would be applied in determining whether charges of professional misconduct have been established by clear and convincing evidence as required by C.R. C.P. 241.14(d). "[T]he factual findings of the Grievance Committee are binding upon this court unless, after considering the record as a whole, we conclude that they are clearly erroneous and unsupported by substantial evidence." *Gibbons*, 685 P.2d at 173. In addition, when the Grievance Committee performs its function as the fact finder it has the duty to assess the credibility of all the controverted and uncontroverted evidence before it. *Pioneer Construction Co. v. Richardson*, 176 Colo. 254, 490 P.2d 71 (1971). Applying these principles to the record of the grievance proceedings here, we conclude that there is substantial evidence in the record to support the findings of the Grievance Committee and that its factual determinations are not clearly erroneous.

The following are the pertinent facts as found by the Grievance Committee or about which there is no dispute. The respondent was admitted to the bar in 1974, is registered as an attorney and, thus, is subject to the jurisdiction of this court and of its Grievance Committee with respect to his conduct as an attorney.

On or about January 23, 1980, Commercial Credit Corporation (C.C.C.), a Maryland finance company, referred a collection matter to the respondent. The respondent was requested to initiate legal action to collect $1,029.18 owing on a promissory note signed by a young, single, and unemployed debtor. The respondent filed a complaint in the Arapahoe County Court on February 19, 1980. Although the debtor proved difficult to locate, service of process was perfected and the return date was set for May 14, 1980. The debtor appeared in the county court on that date. The respondent and the debtor entered into a stipulation which required the debtor to make graduated monthly payments. The stipulation provided for entry of judgment if the debtor defaulted on the payment schedule, upon the respondent's giving 10 days notice to the debtor.

The debtor made two monthly payments of $10 each, which the respondent forwarded to C.C.C. in September 1980. However, the debtor disappeared and made no further payments as required by the stipulation.[1] At no time did the respondent request the Arapahoe County Court to enter judgment pursuant to the terms of the stipulation.

After C.C.C. heard nothing more from the respondent for approximately six months, Joan Oppel, a C.C.C. claims manager to whom the debtor's account had been assigned, began writing letters and making telephone calls to the respondent in order to determine the status of his collection efforts. The respondent did not answer the first four or five letters and did not return any of the more than one dozen

---

1. The debt was discharged in bankruptcy proceedings filed by the debtor on July 27, 1983.

telephone calls until October 1981,[2] after C.C.C. had threatened to file a grievance against the respondent. On October 8, 1981, the respondent sent C.C.C. a letter in which he enclosed a check for $119, which he represented as money he had collected from the debtor. These funds, however, were the respondent's.[3] He decided to send C.C.C. his own money in order to alleviate the pressure being applied by his client to produce written status reports. On November 17, 1981, the respondent falsely told Oppel that he had obtained a judgment against the debtor.

After C.C.C. placed additional phone calls and made other efforts to communicate with the respondent, all of which proved to be unsatisfactory, it requested the return of its file and lodged a complaint with the Grievance Committee. Before he was aware that the grievance had been filed, the respondent again used his own funds and mailed a check for $47.35 to C.C.C. on April 29, 1982. The respondent falsely stated that this money represented the net proceeds from a garnishment of the debtor's bank account. The respondent claims that he also sent copies of his file by separate letter to C.C.C., which it denies receiving. It was not until June 1983 that the respondent's attorney discovered the original promissory note in the respondent's files and mailed it to C.C.C.

In connection with the grievance proceeding, the respondent failed to file an answer either to the request for investigation or the formal complaint until after a default had been entered. The default was later vacated by the hearing board upon the respondent's motion filed by his attorney.

## II.

### THE CONCLUSIONS

The respondent has taken exception to the Grievance Committee's conclusions that his failure to: (1) communicate with his client violated DR6–101(A)(3); (2) return the promissory note to C.C.C. when requested violated DR9–102(B)(4); and (3) cooperate with the Grievance Committee at the early stages of the investigation contravened the provisions of C.R.C.P. 241.6(7). We discuss each in turn.

### A.

DR6–101(A)(3) provides that "[a] lawyer shall not: Neglect a legal matter entrusted to him." The respondent admits that Oppel requested monthly written reports concerning the status of C.C.C.'s claim against the debtor. The Grievance Committee found that the respondent's failure to communicate with his client for a period of almost a year was "complete and willful." The respondent, who admits that his communication with his client was poor, claims by way of defense and argument only that he believes he spoke with Oppel "on more occasions than she related" or "more than her letter suggests." We conclude, as did the Grievance Committee, that the respondent's failure to communicate with C.C.C. clearly violated DR6–101(A)(3).

A lawyer has a duty under the Code of Professional Responsibility to provide accurate information to the client regarding the status of a legal matter entrusted to him or her. *People v. Witt*, 200 Colo. 522, 616 P.2d 139 (1980); *Martin v. State Bar*, 20 Cal.3d 717, 144 Cal.Rptr. 214, 575 P.2d 757 (1978); *In re Brown*, 88 N.J. 443,

---

2. The respondent's only documented response to these efforts was one telephone call he placed on June 16, 1981, to Joan Oppel of C.C.C. Oppel was not in her office and no information concerning the case was communicated to any C.C.C. personnel by the respondent. A single, unsuccessful telephone call that imparted no information to the client does not render the Grievance Committee's findings clearly erroneous or lacking in substantial evidence on this issue.

3. The respondent's check for $119 was returned to C.C.C. by the respondent's bank due to insufficient funds in his account. In 1981, the respondent wrote approximately twelve checks on his personal account that were dishonored because of insufficient funds. These checks formed the basis of a charge, which was dismissed by the Grievance Committee, because the checks were written for personal obligations and all of them were subsequently paid with no loss to any of the parties who cashed them.

443 A.2d 675 (1982). Here, the respondent not only failed to inform his client about the status of the case, but he misrepresented to C.C.C. that he had obtained a judgment and had garnished the debtor's bank account.

We find unpersuasive the respondent's contention that C.C.C. was not prejudiced by his action. First, the "no harm, no foul" defense was rejected in *People v. Gibbons*, 685 P.2d 168, 174 (Colo.1984). Second, the respondent's failure to communicate with his client caused Oppel to spend unnecessary time, money, and effort to obtain information from the respondent concerning the status of the case. *People v. Bugg*, 200 Colo. 512, 616 P.2d 133 (1980). While Oppel may have been aggressive in her pursuit of information from the respondent, his failure to communicate with his client cannot be condoned. The respondent's conduct constitutes "a total disregard for the necessity of maintaining communication with his clients." *Witt*, 200 Colo. at 524, 616 P.2d at 140.

### B.

DR9–102(B)(4) provides that "[a] lawyer shall: Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." On April 1, 1982, C.C.C. demanded that the respondent return its file, including the original promissory note signed by the debtor, together with any funds on hand. It is undisputed that, in response, the respondent sent C.C.C. his own funds of $47.35, which he represented to be the proceeds from an attachment proceeding. The respondent claims that he copied the contents of his file and mailed the copies of the documents to his client. C.C.C., however, denies that it received the packet of information. C.C.C., in turn, sent a letter dated May 10, 1982, to the respondent advising him that it had received the funds but not the file. The respondent testified that he did not receive the letter from C.C.C. Regardless of the merits of each party's claim, the fact remains that the original promissory note was not received by C.C.C. until July 8, 1983, after the respondent's attorney mailed the document to C.C.C.

### C.

C.R.C.P. 241.6(7) provides that the "[f]ailure to respond to a request by the Committee without good cause" shall constitute grounds for discipline. The respondent concedes that he violated this rule when he failed to respond to the informal complaint. *See People v. Tyler*, 678 P.2d 1014 (Colo. 1984); *People v. Young*, 673 P.2d 1003 (Colo.1984). We note that the respondent obtained counsel who persuaded the Grievance Committee to vacate the order of default entered after the respondent failed to file an answer to the formal complaint. The respondent's conduct toward the Grievance Committee thereafter was described by the disciplinary prosecutor as "exemplary." The respondent's cooperation, albeit tardy, is only a mitigating factor to be considered in determining the appropriate discipline for his admitted violation of C.R. C.P. 241.6(7).

### III.

### DISCIPLINE

At the outset, we recognize the personal and professional difficulties the respondent was experiencing at the time of the events described in this opinion. The respondent's personal life was substantially unsettled by dissolution of marriage proceedings and the sudden illness and death of the wife of the lawyer with whom the respondent was sharing office space. The respondent had left the law firm to which C.C.C. had originally referred the collection matter and had set up his own practice to handle criminal, juvenile, and domestic cases on a flat fee basis. His financial situation was precarious because of the new legal practice and the fact that his part-time job with the state was in jeopardy because of a recurring budgetary crises. In addition, the respondent fully cooperated with the Grievance Committee after he obtained counsel.

In contrast to these mitigating factors, the respondent previously has been given three letters of admonition by the Grievance Committee for his failure to communicate with and provide information to other clients. In May 1979, the respondent was admonished ·for violating DR6–101(A)(3) and DR7–101(A)(2) as a result of his failure to communicate with a client for nearly one year. The second letter of admonition was issued on October 18, 1980, and was again related to a violation of DR6–101(A)(3) when the respondent failed to respond to client inquiries concerning the status of a case. The third letter of admonition was issued on November 3, 1982, and involved the respondent's failing to communicate with his client and changing his address and telephone number without notifying the client.

These instances of neglect and delay constitute an unacceptable pattern of unprofessional conduct which is contrary to the Code of Professional Responsibility. *People v. Nutt,* 696 P.2d 242, 249 (Colo.1984); *Witt,* 200 Colo. at 524, 616 P.2d at 140. While the disciplinary recommendation of the Grievance Committee is advisory only and not binding on this court, *e.g., Nutt,* 696 P.2d at 249, we are persuaded that suspension is fully warranted.

Accordingly, the respondent, Denis John Blanck, is suspended from the practice of law for a period of 30 days in accordance with C.R.C.P. 241.21(a).[4] He is further ordered to pay the costs of this proceeding in the amount of $617.42 within 30 days from the date. of this order of suspension.