The PEOPLE of the State of
Colorado, Complainant,

v.

Eddie G. DISTEL,
Attorney–Respondent.

No. 86SA418.

Supreme Court of Colorado,
En Banc.

April 18, 1988.

Rehearing Denied Sept. 15, 1988.

Linda Donnelly, Disciplinary Prosecutor, George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Hall & Evans, Gary R. Cowan, Colorado Springs, for attorney-respondent.

ROVIRA, Justice.

In this disciplinary proceeding, a hearing panel of the Supreme Court Grievance Committee recommended that respondent, Eddie G. Distel, be suspended from practicing law for one year and one day, that he be ordered to pay the costs of these proceedings, and to make restitution. The recommendation was based on several incidents of professional misconduct which resulted in the violation of the disciplinary rules and Rule 241.6 of the Colorado Rules of Civil Procedure. We accept the recommendation and order that the respondent be suspended for one year and one day, pay the costs of these proceedings, and make restitution.

## I.

The respondent was admitted to the bar of the Supreme Court of the State of Colorado in 1974, and is subject to the jurisdiction of this court and its Grievance Committee.

In August 1985, a complaint was filed against the respondent by the People in accordance with C.R.C.P. 241.12(a). The complaint was assigned Case No. GC 85B-26 and alleged that Betty Rowley, the complaining witness, had consulted with the respondent concerning a malpractice claim against a Grand Junction doctor. The respondent informed her that he was not knowledgeable in the area but would have a consulting firm in Chicago investigate the matter. The respondent requested a $1,000 retainer to cover the cost of the consulting firm. On June 30, 1980, Rowley gave the respondent a check for $1,000. Rowley called the respondent's office on numerous occasions and was informed that he had not heard from the Chicago firm. In December 1981, the respondent informed Rowley that the investigation firm informed him that her case had no merit, but he neglected to inform her that a two-year statute of limitations would apply to her malpractice claim. The complaint stated that in January 1982, Rowley decided to change attorneys and asked for her files. On receiving her files, a year after her first request, Rowley found no correspondence or report from the investigation firm. She asked for such documents and an explanation of how the $1,000 had been spent, but she received no satisfactory response. All that Rowley received from the respondent was a copy of a letter to the Chicago firm, dated July 8, 1980, inquiring as to its fees for evaluation, an invoice from a local hospital for medical records, along with copies of her medical records. The complaint alleged that the respondent's conduct violated C.R.C.P. 241.6 and the Code of Professional Responsibility, DR1–102(A)(1) (a lawyer shall not violate a disciplinary rule), DR2–106(A) (a lawyer shall not charge or collect a clearly excessive fee), DR6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him), and DR9–102(B)(4) (a lawyer shall promptly deliver to the client as requested by a client properties in the possession of the lawyer which the client is entitled to receive).

The respondent, appearing *pro se*, filed an answer in which he denied the material allegations of the complaint. He admitted receiving $1,000, but claimed that it was for the purpose of investigating the malpractice claim. He also stated by way of affirmative defenses that since four years had elapsed since Rowley was informed by him that her claim did not warrant a suit, the People should be estopped to maintain

this action "after any reasonable time has been grossly exceeded." Also, since Rowley had taken her files from the respondent's office, the People should now be estopped "to complain about the inclusion or non-inclusion of any matters concerning that file."

In December 1985, another complaint was filed with the Grievance Committee and assigned Case No. GC 85B–43. In count I it alleged that beginning in 1981, the respondent represented Gary Bizer and Donna Fitzpatrick on various legal matters, including a worker's compensation case that was concluded in early 1982. In October 1982, the respondent filed an answer on behalf of Bizer in *Financial Collection Agencies, Inc. v. Bizer*, involving collection of an overdue school loan. In May 1983, a judgment in that case was entered by stipulation in the amount of $2,985.86, plus costs. The complaint stated that the respondent claimed over $3,500 in unpaid fees from Bizer and Fitzpatrick for past legal services. In July 1983, Fitzpatrick hand-delivered to the respondent a personal check in the amount of $2,000. Of that amount, $1,800 was to be paid to the collection agency in satisfaction of the student loan judgment against Bizer and $200 was to be applied to the respondent's fees. On the face of the check Fitzpatrick wrote "Gary Bizer School Loan." The respondent deposited the check in his trust account.

The complaint further alleged that the school loan judgment remained unpaid. Fitzpatrick later learned that the respondent did not pay the collection agency, but converted the money to his own use. When a new attorney retained by Fitzpatrick demanded reimbursement of her funds, the respondent maintained that it was payment toward his fees.

The complainant claimed that the respondent's conduct violated C.R.C.P. 241.6 and DR1–102(A)(1), DR9–102(A) (preserving identity of funds and property of a client), and DR9–102(B)(4).

Count II alleged that the respondent, in his response to the request for investigation, falsely stated that he did not repre-

sent Bizer in the student loan matter and did not stipulate to a judgment. The court file revealed that the respondent signed a stipulated judgment in May 1983.

The complaint stated that the respondent's conduct violated C.R.C.P. 241.6(1) and (7) (act or omission which violates Code of Professional Responsibility or obstruction of Grievance Committee is ground for discipline), DR1–102(A)(1) and (4) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

The respondent, appearing *pro se*, filed an answer in which he admitted: (1) representing Bizer in the school loan matter and entering into a stipulation for judgment; (2) receiving $2,000 in July 1983; and (3) that he made an erroneous response to the request for investigation, but that the error was not intentional. He also stated that Bizer and Fitzpatrick owed him over $3,500 for past services. The other allegations of the complaint were denied. A motion to consolidate both cases was granted and they were set for hearing on March 11, 1986.

On January 17, 1986, the respondent was ordered by the presiding officer of the hearing board (board) to attend a prehearing conference on February 18, and to submit his prehearing statement no later than February 11. The respondent agreed to have his deposition taken on February 18. The respondent failed to file a prehearing statement and did not appear for the matters scheduled on February 18. The People moved for an entry of default as a sanction against the respondent for his failure to comply with the presiding officer's order. In response, the respondent claimed that his failure to appear was due to illness and he was willing to cooperate in all respects. The motion was denied.

At the February 18 hearing, the presiding officer entered a written order requiring the respondent to object to the admissibility of exhibits no later than February 28, ordered the respondent to file a statement and list of authorities supporting any claim by the respondent that the $1,800 given to him by Fitzpatrick was the respondent's property under an attorney's lien, and that

the respondent could not raise that issue in GC 85B-43 unless the statement was filed by February 28. The order also required counsel for the People to file a brief on the admissibility, at trial, of the respondent's prior disciplinary history by February 21, and for the respondent to file an opposing brief by February 28. The order provided that in the absence of the respondent's filing a brief, evidence of his prior disciplinary history would be admissible at trial for uses consistent with the Colorado Rules of Evidence. On March 10, 1986, the respondent filed a trial data certificate, but neither filed a statement regarding an attorney's lien nor a brief on the admissibility of prior discipline by the time specified or at any other time through the end of the hearing.

On March 11, 1986, the presiding officer vacated the hearing scheduled for March 11 and 12 upon motion by the respondent. The respondent claimed that he had been unable to prepare for the hearing because of health and emotional problems. The hearing was then rescheduled for August 28 and 29, 1986. At that time, three matters were to be considered by the board: (1) the Rowley grievance; (2) the Bizer–Fitzpatrick grievance; and (3) the charge that the respondent misrepresented facts during the board's investigation of the Bizer–Fitzpatrick matter.

### The Rowley Matter

Two weeks before the hearing set for August 28, counsel entered an appearance for the respondent. After a one-day hearing, the board found that Rowley went to the respondent during the summer of 1980 for legal advice concerning a potential malpractice suit based upon treatment of a cancerous condition in her ear. The respondent told her that he thought her case had merit, but that since he was not an authority, he would contact a "Chicago firm" to evaluate the merits of her claim and that the Chicago firm would charge an initial fee of $1,000 to undertake the evaluation. Rowley gave the respondent $1,000 in June 1980.

Rowley waited several weeks, then began to inquire about the status of the matter. Initially, the respondent stated that he had not heard from the Chicago firm. Finally, in either December 1980 or January 1981, the respondent told Rowley that the firm had evaluated her claim and found it to be without merit. Between December 1981 and February 1982, Rowley discharged the respondent over a disagreement involving preparation of a will. Subsequently, Rowley obtained her file from the respondent. In that file she found her medical records and the respondent's letter, dated July 8, 1980, to Medical Advisory Association, Inc., a Chicago, Illinois malpractice evaluation firm, inquiring what fees the company would charge for a medical malpractice evaluation. The respondent admitted that he sent the letter and had later received a telephone call from Medical Advisory Association informing him that the company offered advice and assistance for trial and not initial evaluations. The respondent admitted receiving the $1,000 from Rowley which he maintained was his fee to investigate the malpractice matter. He contended that he had made no promises to Rowley other than to investigate the matter and had not promised a report from a Chicago research service.

Apart from sending the letter to the Chicago firm, and sending letters to the prospective defendant, other doctors, and a hospital requesting Rowley's medical records, the respondent did nothing further on behalf of his client. At no time in his representation of Rowley did the respondent caution her about the two-year statute of limitations applicable to malpractice actions. The respondent claimed that he had expended approximately twenty hours on the investigation, but that his time cards were in the file when Rowley picked it up, and he could not reconstruct his time. A former employee of the respondent testified, however, that the time cards were not in the file when she gave it to Rowley.

The board resolved the credibility issue between the respondent and Rowley in favor of Rowley. It concluded that the respondent did mention the Chicago service because his July 8, 1980 letter was sent

only a few days after Rowley gave him the $1,000. Further, the respondent offered no evidence of his twenty hours of investigation other than his own statement.

The board concluded that the $1,000 charged (which the respondent never returned to Rowley) constituted a clearly excessive fee in violation of DR2–106(A), and that his failure to advise his client that her malpractice action was subject to time limitations constituted neglect in violation of DR6–101(A)(3). It also concluded that because the respondent delayed in giving Rowley her file and because he did not return any unearned fee there was a violation of DR9–102(B)(4). Because of these violations of the disciplinary rules, the hearing board also found a violation of DR1–102(A)(1) and C.R.C.P. 241.6(1).

### The Bizer–Fitzpatrick Matter

The evidence established that Donna Fitzpatrick and Gary Bizer had each been represented by the respondent over a period of several years: Bizer on matters related to dissolutions of marriage, a worker's compensation claim, and a delinquent school loan, and Fitzpatrick in regard to an automobile accident. The respondent billed them periodically at the same address.

The school loan matter arose when Bizer was sued on two promissory notes he had made for school loans. On May 3, 1983, the respondent entered into a stipulated judgment with counsel for the collection agency to whom the notes had been assigned by the Department of Health, Education and Welfare. The judgment was $1,785.32 plus interest of $26.85, costs of $27.20, and attorney fees to be determined by the court.

In July 1983, Fitzpatrick and Bizer discussed the school loan matter and Fitzpatrick agreed to borrow money to pay the judgment. She gave a check, dated July 15, 1983, in the amount of $2,000 to the respondent which was deposited in his trust account. Though Fitzpatrick signed the check, she wrote on the front of it the notation "Gary Bizer School Loan." Fitzpatrick testified that $1,800 was to be allocated to the school loan judgment and the remaining $200 to legal fees owed the respondent by her and Bizer.

The attorney for the collection agency subsequently contacted Bizer and Fitzpatrick in an effort to collect the judgment. Both of them informed him of the payment to the respondent. Fitzpatrick then retained another attorney who wrote to the respondent and asked that the money be returned to Fitzpatrick. The respondent replied that the payment was for attorney fees totalling more than $3,000 incurred by both Bizer and Fitzpatrick, and that the payment was not to satisfy the judgment, but "was a condition under which I would undertake negotiations with regard to the settlement of a school loan." In effect, the respondent testified that Fitzpatrick and Bizer paid him the $2,000 so that he would continue to represent them.

Evaluating the testimony of the witnesses and resolving issues of credibility in favor of Bizer and Fitzpatrick, the board found it highly probable that the money was borrowed for the purpose of paying the school loan judgment and not for the purpose of paying attorney fees. Given that the complaining witnesses were already in arrears to the respondent at the time of the school loan matter for payment of previous services, the board believed they would not borrow money except to satisfy the judgment.

Accordingly, the board concluded that the respondent's failure to pay the judgment creditor, refusal to refund the payment or any part of it upon request by Fitzpatrick's attorney, and conversion of the money to his own use violated DR9–102(A) and (B)(4). Because of these violations the board also found a violation of DR1–102(A)(1) and C.R.C.P. 241.6(1).

With reference to count II, the allegation that the respondent made a false statement to the committee when he initially denied representing Bizer in the student loan matter and did not stipulate to a judgment, the board concluded that the respondent should have had some recollection of action taken on behalf of Bizer regarding this matter. Further, the respondent had an obligation to check the court file in the absence of his

own file before responding to the Grievance Committee inquiry. The board found that the respondent's admitted false statement violated DR1–102(A)(4) and C.R.C.P. 241.6(7), and that because of this violation, there was also a violation of C.R.C.P. 241.-6(1) and DR1–102(A)(1).

The board considered both mitigating and aggravating factors in arriving at its recommendation for discipline. As to the former, the respondent stated he suffered migraine headaches which interfered with his ability to function and for which he is under medical care. An aggravating factor was the respondent's prior record of discipline. In 1983 he received a private censure as the result of his misrepresentation in obtaining a personal bank loan.

Given the respondent's prior discipline, and considering the nature of the previous offense, dishonesty, and the fact that these violations are similar in nature, the board recommended that the respondent be suspended for one year and one day; that upon application for reinstatement he be required to give evidence of treatment for migraine headaches; that he pay restitution to Rowley in the amount of $995 and to Fitzpatrick and Bizer in the amount of $1,800; and that he pay the costs of these proceedings in the amount of $1,147.02. A hearing panel of the Grievance Committee approved the findings, conclusions, and recommendations of the hearing board.

The respondent, pursuant to C.R.C.P. 59(d)(4), filed a motion for new trial. The basis of the motion was that the respondent had been able to locate two former employees of his law firm who would be able to testify concerning the Rowley and Bizer–Fitzpatrick matters. Further, that Joyce Tullio, one of the witnesses who had testified for the complainant, proffered perjured testimony before the board.[1]

The board, finding that the proposed testimony of the respondent's former employees and the allegations regarding perjured testimony failed to meet the requirements of C.R.C.P. 59(d)(4) for newly discovered evidence, denied the motion. The hearing panel affirmed.

The respondent, pursuant to C.R.C.P. 241.20(b), filed exceptions to the board's findings, conclusions, and recommendations. He contends that the board: (1) abused its discretion in denying his motion for a new trial; (2) erred in not resolving conflicts of testimony in his favor; (3) erred in admitting evidence of his prior record of discipline during the hearing; and (4) erred in not allowing him an attorney's lien for monies received from Bizer and Fitzpatrick. We will consider each of these claims in turn.

## II.

### A.

C.R.C.P. 59(d)(4) provides:

Subject to provisions of Rule 61, a new trial may be granted for any of the following causes:

. . . .

(4) Newly discovered evidence, material for the party making the application which that party could not, with reasonable diligence, have discovered and produced at the trial.

The substance of the respondent's argument is that in the Bizer–Fitzpatrick matter the whole case rested on whether or not he received the check delivered by Fitzpatrick or whether it was received and deposited by an employee. The respondent argues that if he did not receive the check he would not have known that $1,800 was to be used to pay the school loan judgment and, therefore, when he credited the entire $2,000 to the fees owed him he had done nothing wrong.

The respondent also contends that a witness, Joyce Tullio, who was called by the People, had "previously signed an affidavit to the effect that Respondent had agreed to represent Gary Bizer free of charge. The use of this witness taints the whole case for the People since, when asked . . . if she would give a false statement because

---

1. The motion was filed with the Clerk of the Supreme Court. By order dated December 11, 1986, we referred the motion to the Grievance Committee for consideration.

the complaining witnesses were her friends, she replied, 'No.' [Later] she falsely denied agreeing to provide alibi testimony in [a previous criminal case where the complaining witnesses had been represented by respondent]." The respondent claims that an affidavit signed by Tullio in May 1983 demonstrated an attempt to provide alibi testimony for Fitzpatrick, and that the affidavit was not located until after the hearing in August 1986.

▌ Where a new trial is sought on the ground of newly discovered evidence we have required first, that the applicant establish that the evidence could not have been discovered in the exercise of reasonable diligence and produced at trial. Second, that the evidence was material to an issue before the court. Third, the applicant must establish that the evidence, if admitted by the court, would probably change the result of the trial. *People in Interest of P.N.*, 663 P.2d 253, 256 (Colo.1983).

The respondent knew about the Rowley allegations no later than December of 1983, and the Bizer–Fitzpatrick allegations no later than June 1985. The formal complaints were filed in the latter part of 1985. At the respondent's request, the hearing was postponed from March to August 1986.

▌ The respondent had available almost three years to prepare for the Rowley complaint, and over one year to prepare for the Bizer–Fitzpatrick complaint. The respondent now purports not to have been able to locate two potential witnesses and one document during this time period. The respondent's claim must be measured against his apparent ability to locate these same witnesses and document in the three weeks between the time this court issued the citation commencing respondent's appeal from the board's findings, conclusions, and recommendations (November 6, 1986), and the filing of his motion for new trial (November 26, 1986).

There is no showing that the respondent, during the period between the filing of the complaints and the August hearing, had attempted to locate his former employees, other than vague and unsubstantiated assertions that the employees had "moved out of the state and their whereabouts [were] not known in August 1986." Nor is there any showing of the efforts which the respondent made in order to locate the evidence he now claims is of such importance. In fact, he conceded in his motion for a new trial that the affidavit had been in his possession but mistakenly stored for some time prior to the August 1986 hearing.

Rather than exhibit the "reasonable diligence" required for relief under C.R.C.P. 59(d)(4), the respondent displayed indifference concerning the proceedings.[2] He is, therefore, entitled to no relief under at least the first prong of *P.N.*, 663 P.2d at 256.

In addition to the requirement of reasonable diligence, C.R.C.P. 59(d)(4) also requires the applicant to establish that the evidence, if admitted, would probably change the result of the trial. *Id.* The evidence belatedly offered by the respondent also fails to satisfy this prong of the test.

Contrary to the respondent's assertions, the entire case against him does not rest "upon whether . . . respondent actually received the check delivered to the office by Fitzpatrick." Indeed, that particular issue only goes to when, not whether, the respondent converted his client's money. Even assuming that he did not personally receive the check and, therefore, was not aware of the restrictive notation on its face, he nonetheless certainly was aware by March 1985 that the check was to be used to pay off the Bizer judgment. It was in March that Fitzpatrick's new attorney wrote the re-

---

2. Moreover, respondent's lack of reasonable diligence is also evident in the repeated failures and omissions exhibited during the year in which formal proceedings were pending. During that period of time, respondent failed to: appear for a prehearing conference scheduled by the presiding officer; appear at his own deposition, or the deposition of a witness; file a statement of authorities concerning his claim to an attorney's lien; file a brief concerning the admissibility of prior discipline; check any records before filing a response to the Bizer–Fitzpatrick grievance; and subpoena Rowley for documents claimed necessary for his defense.

spondent explaining the purpose of the check and demanding return of the money. The respondent replied by refusing to return the money, claiming that "[t]he payment was a condition under which I would undertake negotiations with regard to settlement of a school loan." The respondent failed to apply client money to its proper purpose, and kept it for himself, despite notification that it was to be returned.

The critical issue, therefore, is not whether the respondent ever saw the July 15, 1983 check, but rather, whether $1,800 of Fitzpatrick's payment was to be applied to the school loan judgment. If it was the latter, then respondent's failure to follow through on the desire of his client constitutes conversion, whether occurring in July 1983 or March 1985.

Thus, even if respondent's employee were to testify that she received the check and deposited it in the respondent's trust account, this would not have affected the board's findings and conclusions regarding this matter. Whatever the circumstances attending the initial retention of the check from Fitzpatrick, the respondent engaged in conversion of his client's money when he refused to return it.

In addition, the alleged perjury of Joyce Tullio, far from "taint[ing] the whole case for the People," was irrelevant to the outcome reached by the board. In its findings, the board expressly held that it gave "greater weight to the testimony" of one of the respondent's former employees, who proffered testimony directly contradicting that proffered by Tullio. It is difficult to perceive how newly discovered evidence undermining testimony which had already been discounted by the board could have made much of a difference in this proceeding.

The board did not base its findings and conclusions upon any particular fact, but on the basis of all the evidence presented. In the board's own words: "Considering all the evidence, The Hearing Board resolved those issues in favor of the complaining witnesses and against respondent."

Since the board properly exercised its discretion in denying the respondent's motion for a new trial on the ground of newly discovered evidence, its resolution of that motion should not be disturbed on appeal. *Crespin v. Largo Corp.*, 698 P.2d 826, 828, *aff'd*, 727 P.2d 1098 (Colo.1986).

## B.

The respondent contends that the hearing board erred in not resolving conflicts of testimony in his favor. C.R.C.P. 241.14(d) provides that "[h]earings shall be conducted in conformity with the Colorado Rules of Civil Procedure, the Colorado Rules of Evidence, and the practice in this state in the trial of civil cases; provided, however, that proof shall be by clear and convincing evidence." He argues that this standard of proof requires proof which is unmistakable and almost a certainty, and it is a standard at least as severe as proof "beyond a reasonable doubt."

■ The standard of proof we adopted in C.R.C.P. 241.14(d) strikes a fair balance between the interest of the lawyer and the interest of the public. Proof by "clear and convincing evidence" is proof which persuades the trier of fact that the truth of the contention is "highly probable." It is evidence which is stronger than a "preponderance of the evidence." *People v. Taylor*, 618 P.2d 1127, 1136 (Colo.1980).[3] "The clear and convincing standard thus minimizes the risk of error. It is also less rigorous in the degree of probability it demands than proof 'beyond a reasonable doubt, ...'" *Id.*

■ In *People v. Gibbons*, 685 P.2d 168 (Colo.1984), we adopted the standard of review that would be applied in determining whether charges of professional misconduct have been established by clear and convincing evidence. "[T]he factual findings of the Grievance Committee are binding upon this court unless after considering

---

3. *See* CJI–Civ.2d 3:2 defining clear and convincing evidence: "By 'clear and convincing evidence' is meant that evidence which is stronger than a 'preponderance of the evidence' and which is unmistakable and free from serious or substantial doubt."

the record as a whole, we conclude that they are clearly erroneous and unsupported by substantial evidence." *Id.* at 173. Moreover, when a hearing board acts as a fact finder, it has the duty to assess the credibility of all the evidence before it, both controverted and uncontroverted. *People v. Blanck*, 700 P.2d 560, 561 (Colo.1985). In determining whether the board's findings are supported by substantial evidence, it is not within the province of this court to measure the weight of the evidence or to resolve the credibility of witnesses. *Wilson v. Board of County Commissioners*, 703 P.2d 1257, 1259 (Colo.1985). That is the province of the fact finder, in this case, the hearing board.

█ Here, the board applied the proper standard of proof in discharging its duty to assess the weight and credibility of the evidence in reaching its findings.[4] Further, since those findings are supported by substantial evidence, they are binding on this court in this proceeding. *Gibbons*, 685 P.2d at 173.

█ We find no merit in the respondent's argument that where a clear and convincing standard is mandated all conflicts in the testimony must be resolved by the fact finder in his favor.

### C.

█ The respondent alleges that his defense was prejudiced when the board permitted the introduction of his disciplinary record into the evidentiary portion of the case. He contends that prior discipline should only be considered as a circumstance in selecting the appropriate sanction.

In support of his argument that prior discipline should not be admitted at the evidentiary stage of the proceedings, the respondent cites C.R.C.P. 241.15 and selected provisions of the *ABA Standards for Imposing Lawyer Sanctions* (1986), Law. Man. on Prof.Conduct (ABA/BNA) No. 33 at 01:801 (5/28/86).

C.R.C.P. 241.15 is, however, silent as to the evidentiary issue presented. That rule specifies in relevant part: "In preparing its report, the hearing board shall take into consideration the respondent's prior disciplinary record, if any." Although this language certainly permits the use of a prior disciplinary record in the sanction phase, there is nothing in the section cited to indicate that prior discipline may not be introduced, for any purpose whatsoever, during the evidentiary phase of the proceedings.

A similar analysis applies to the *Standards for Imposing Lawyer Sanctions.* Those standards are concerned solely with the consequences of ethical wrongdoing, not with the evidentiary principles governing disciplinary proceedings. *See, e.g., Standards* IV.A. § 1.3.[5] The only provision in these standards to explicitly mention prior discipline is section 9.22(a), which specifies that prior disciplinary offenses are a factor which may be considered in aggravation. Law.Man. on Prof.Conduct at 01:841. But again, this section does not address, much less proscribe, the use of prior misconduct in the guilt determination phase of a disciplinary proceeding.

The use of an attorney's prior disciplinary record is discussed, however, in the *ABA Standards for Lawyer Discipline &*

---

**4.** The board expressly made reference to this highly probable "clear and convincing" standard in issuing its findings and conclusions. "The Hearing Board finds it is highly probable the facts presented by Mr. Bizer and Ms. Fitzpatrick are true...."

**5.** *ABA Standards for Imposing Lawyer Sanctions,* IV.A. § 1.3 commentary, provides in relevant part:

The Standards for Imposing Lawyer Sanctions are guidelines which are to be used by courts or disciplinary agencies in imposing sanctions *following* a finding of lawyer mis-

conduct. These standards are not grounds for discipline, but, rather, constitute a model for the courts to follow in deciding what sanction to impose for proven lawyer misconduct. While these standards set forth a comprehensive model to be used in imposing sanctions, they also recognize that sanctions imposed must reflect the circumstances of each individual lawyer, and therefore provide for consideration of aggravating and mitigating circumstances in each case.

Law.Man. on Prof.Conduct (ABA/BNA) at 01:810 (emphasis in original).

*Disability Proceedings* § 8.39 (1983), Law. Man. on Prof.Conduct (ABA/BNA) 01:501, 01:535. Section 8.39 states the general rule that: "Information regarding prior discipline of a respondent normally should not be divulged to a hearing committee until after there has been a finding of misconduct in the present matter." The commentary to that section specifies that prior discipline, although relevant and material to the issue of degree of discipline to be imposed is, "except in unusual circumstances, not relevant or material to the issue of whether the conduct alleged has occurred. Consequently, introduction of evidence of prior discipline before a finding that the present charges have been sustained is prejudicial." *Id.*

Nevertheless, the commentary permits the introduction of prior disciplinary actions in two situations: (1) if evidence is necessary to prove the present charges; or (2) for impeachment purposes (with the added caveat that prior discipline "should not be used as a substitute for proving the allegations at issue."). *Id. See In re All-per*, 94 Wash.2d 456, 617 P.2d 982 (1980) (procedure utilized did not violate due process where evidence of prior discipline introduced to prove present count of complaint). Thus, the proscriptions on prior discipline contained in the *Standards for Lawyer Discipline* dovetail with the prohibitions found in the general rules of evidence pertaining to the use of previous bad acts or offenses. *See, e.g.,* CRE 404(a), 608(b); § 13–90–101, 6A C.R.S. (1987) ("conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness."). Thus, the admissibility of prior discipline is gauged by the same principles which underlay the rules of evidence. No special status is accorded prior disciplinary offenses.

In the instant case, the People offered into evidence a previous incident of unethical conduct involving the respondent to impeach his credibility. The respondent had misrepresented certain financial information in an effort to acquire a personal loan, for which he was previously disciplined by this court. In offering the evidence, the People relied on CRE 608, and the board allowed its admittance as relevant pursuant to that rule.[6]

The central issue at the hearing involved credibility questions regarding respondent and his former clients who testified as complaining witnesses. The previous act of misconduct was introduced not as a substitute for proving the allegation at issue (for which there was sufficient "highly probable" evidence), but to reflect another act of respondent probative of his truthfulness. Both the past act of misconduct—for which he was accused of deceit and misrepresentation—and the present acts for which he is accused concern allegations of dishonest behavior, and the respondent's record of truthfulness was relevant to a proper determination by the board in resolving conflicts presented by the testimony. Thus, we conclude that the board properly considered the respondent's prior disciplinary record in judging his credibility as a witness. The use of the evidence in this manner is specifically authorized and contemplated by the commentary to section 8.39 of the *ABA Standards for Lawyer Discipline*, and the Colorado Rules of Evidence, specifically, CRE 608(b), which this court has expressly made applicable to disciplinary proceedings. *See* C.R.C.P. 241.14(d).[7]

---

**6.** CRE 608(b) provides in relevant part:
  (b) *Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in 13–90–101, C.R.S. 1973, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthful-

ness of another witness as to which character the witness being cross-examined has testified.

**7.** The People also contend that the respondent waived his right to raise the issue of the use of prior disciplinary acts. In February 1986, the respondent was directed by the presiding officer of the board to file a brief on the subject of the admissibility of prior discipline within a ten-day period. Although the respondent was warned that failure to do so would result in the admittance of the evidence, he failed to comply with this portion of the board's order.

### D.

Finally, the respondent contends that he should have been allowed an attorney's lien for moneys received from Bizer and Fitzpatrick.

In February 1986, the board ordered the respondent to submit a statement and list of authorities within ten days supporting his claim that the $1,800 given to him by Fitzpatrick was his property under an attorney's lien. In the same order, the respondent was also advised that unless the statement was filed by the date requested, he could not raise the attorney's lien as an issue. The respondent failed to comply with the board's order. We find no error in the board's denial of the respondent's claim that he was entitled to an attorney's lien.

Apart from the waiver issue, the respondent has also failed to demonstrate how the board could "grant" the respondent a statutory lien, nor why it should do so, even assuming it possessed such jurisdiction. The respondent's contention is without merit.[8]

In summary we affirm the findings, conclusions, and recommendations of the board, as considered and unanimously approved by the hearing panel.

■ Accordingly, the respondent is suspended from the practice of law for one year and a day from the date of this opinion. Upon application for reinstatement he will be required to give evidence of treatment for migraine headaches supported by a physician's statement and treatment records. Also, he shall pay restitution to Betty Rowley in the amount of $995; and to Donna Fitzpatrick and Gary Bizer in the amount of $1,800. Finally, the respondent is directed to pay $1,147.07 for the costs of these proceedings to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Denver, Colorado 80202–5435, within sixty days from the date of this opinion.

---

8. In his opening and reply briefs submitted to this court, the respondent raises the defense of laches, although laches was not claimed as an exception to the hearing board's findings, conclusions, and recommendations. The respondent admits that he did not specifically plead laches in his answers to the original complaints. Under C.R.C.P. 241.13, a respondent must set forth in his answer any affirmative defense he may allege. Moreover, C.R.C.P. 241.20 states that "[i]f no exceptions are filed, the matter will stand submitted upon the hearing panel's [board's] report." In light of these provisions, we agree with the People that the respondent's failure to plead this defense, either in his answer, or in the exceptions he submitted to this court, results in a waiver of that defense.