The PEOPLE of the State of Colorado, Complainant,

v.

Andrew M. LOPEZ, Attorney–Respondent.

No. 90SA53.

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

Linda Donnelly, Disciplinary Counsel and Susan L. Fralick, Assistant Disciplinary Counsel, Denver, for complainant.

Andrew M. Lopez, attorney-respondent pro se.

PER CURIAM.

The respondent, Andrew M. Lopez, was charged with professional misconduct in his representation of Halina Topa (Topa) and for his participation in the acquisition and later sale of a bar, when he knew or should

have known of a conflict of interest that he had with his client. Topa is the complaining witness in this case. The hearing panel of the Grievance Committee approved the findings of fact, conclusions, and recommendations of the hearing board and the recommendation that the respondent be suspended for thirty days and be assessed the costs of these proceedings. We approve the findings and conclusions, but impose a six-month suspension upon the respondent for his professional misconduct and order that he pay the costs incurred in these proceedings.

Respondent Andrew M. Lopez was admitted to the bar of this court on May 19, 1975, and is subject to the jurisdiction of this court and its Grievance Committee. C.R.C.P. 241.6. The respondent is engaged in the general practice of law, but limits his practice to business matters and liquor license proceedings. The respondent met Halina Topa in May 1982. They developed a close personal and social relationship that later became business oriented. The disciplinary complaint asserts fraud, conflicts of interest, and that the respondent had taken advantage of Topa by engaging in conduct prejudicial to her interests and had failed to account to her for proceeds he received for her benefit while he was her lawyer. Topa was from Poland, was fluent in five languages, had a degree in business, and was licensed by the New York Stock Exchange. She also owned an interest in real property, which was valued at $50,000 and provided her with rental income.

Topa desired to acquire a business and sought to use her rental property as a down payment to purchase an interest in a business. The respondent assisted her in her efforts to purchase several bars, but, in each instance, her offers were refused because the bar owners were not willing to accept Topa's income property as a down payment. Thereafter, the respondent introduced her to Jackson St. James who bought, sold, and operated bars. St. James agreed to help Topa purchase a bar and entered into a management agreement with Topa. In the agreement St. James covenanted to train Topa to operate and manage a bar. The respondent also recommended Russell Berget, a real estate broker, to assist her in the sale of her income property and the income property was listed with Berget. Topa also entered into a business agreement with the respondent for legal services in the acquisition of a bar. Eventually, the respondent, St. James, and Berget formed JAR Associates, a partnership, to buy and sell bars and taverns, and purchased a bar known as Savanna's using funds or property provided by Topa. The transactions leading to the purchase, sale, repossession, and resale of the bar provide the basis for this disciplinary proceeding.

Both the hearing board and the hearing panel concluded that an attorney-client relationship existed that required that the respondent protect his client against any injury that might arise out of a conflict of interest. Although the respondent denies that he had an attorney-client relationship with Topa, the finding that an attorney-client relationship existed is supported by an abundance of evidence in the record.[1]

## COUNT I

JAR Associates located a bar called Savanna's, which was closed and needed extensive repairs, and spent $9,000 to purchase the equipment in the restaurant, which was valued at $45,000. JAR Associates also paid $7,000 on the lease and outstanding taxes and fees to maintain the liquor license. To facilitate the sale and transfer of Savanna's to Topa, a new corporation called the South Holly Corporation was formed and Topa was issued all of the stock of that corporation. The respondent

---

1. On at least one occasion the respondent brought suit to collect a debt for Topa. He also sued on behalf of Topa and a number of others to obtain specific performance on a contract to purchase Ryan's Off Market bar when Ryan refused to go through with Topa's contract to purchase Ryan's Off Market bar. The respon-dent prepared the contracts and documents for the acquisition of a number of bars by Topa. Topa, in connection with a number of the prospective bar or tavern transactions, obtained independent counsel who testified that the respondent and Topa had a business but not an attorney-client relationship.

prepared the documents and obtained a transfer of the liquor license to the South Holly Corporation.

On March 5, 1984, Topa signed a lease to operate Savanna's. For a short period of time Topa and St. James operated Savanna's. Pursuant to St. James' agreement with Topa, Topa was paid for working at the bar. Not long after the purchase, an offer was made by Floyd Steven Laneer, who worked at Savanna's, to buy the bar and the offer was accepted by both Topa and JAR Associates. Laneer agreed to buy the stock of the South Holly Corporation, which owned Savanna's for $90,000. The purchase agreement included an earnest money payment of $2,000 and a payment of $8,000 at the time of closing. The $10,000 was paid to JAR Associates by Laneer and the funds were used to pay outstanding debts of Savanna's and certain claims by Topa. No formal accounting was made to Topa at the Laneer closing but a promissory note was executed by Laneer to Topa on July 18, 1984. The note required the payment of $1,093.15 per month. Some payments were collected by Topa but Laneer defaulted and the bar reverted to the South Holly Corporation.

In February 1985, a new buyer for Savanna's was located and a new contract was prepared by the respondent. Herman Sidkey and Rita Tulper agreed to purchase the bar for $105,000. The contract specified that $2,500 was to be paid as earnest money and $22,500 upon the assumption of the operation of the bar. Rita Tulper executed an $80,000 promissory note payable to Topa with interest at 11% for the balance of the purchase price. The down payment was made to JAR Associates who permitted the purchasers to reduce their cash payment to $15,000 to provide funds for the operation of the bar with JAR Associates carrying back a $5,000 loan to Sidkey. The $15,000 paid to JAR Associates was used to pay back taxes, debts, and expenses incurred at the bar prior to the sale but no formal accounting was provided to Topa. $1,500 was used to pay for repairs on Topa's rental property and to repay security deposits that Topa owed her tenants.

While the complaining witness was working at Savanna's, she met a customer who was in the oil exploration business in Cyprus and whom she subsequently married. Thereafter the relationship between the respondent and Topa deteriorated and she filed a lawsuit against JAR Associates, the respondent, St. James, and Berget. Berget settled the claim for $6,000. St. James moved to Florida, and a judgment was obtained against the respondent who filed for bankruptcy. The complaining witness, alleging fraud, sought to prevent the respondent's discharge in bankruptcy. After a full hearing in the bankruptcy court, the respondent's debt to Topa was discharged. A complaint was then filed with the Grievance Committee.

No evidence was presented that would establish that there was any attempt to defraud or take advantage of the complaining witness who the hearing board described as sophisticated, intelligent, and knowledgeable about all of the transactions that took place. The monetary loss that was suffered resulted from the default on Tulper's note, which was part of the consideration for the purchase of Savanna's. In addition, Topa was paid more than $16,000 for her services at Savanna's pursuant to her contract with St. James and she is now endeavoring to collect on the note. She acknowledges that Tulper has offered to pay $50,000 for the note, but is not willing to pay both the outstanding principal and interest. The evidence does not establish fraud, deceit, defalcation, overreaching, or misapplication of funds by JAR Associates, or the respondent, St. James, or Berget who were the partners in JAR Associates.

The complex business transactions to acquire different bars and taverns brought about a complaint that produced massive amounts of conflicting testimony. In all of the transactions both the respondent and Topa had a mutual interest in bringing about a successful conclusion to the transaction. The social relationship between the complaining witness and the respondent turned into a business relationship that did not turn out to the satisfaction of any of the parties.

## COUNT II

Count II of the complaint relates to false statements included in applications filed by the respondent before the Colorado Liquor Licensing Authority. Findings also were made to support the claims relating to the false statements and failure to disclose interest in other bars when applications were made for a liquor license. The evidence presented established that the respondent is presently engaged in the general practice of law, and limits his practice to business matters and liquor licensing proceedings. The respondent served as attorney, corporate officer, and co-business participant in the purchase and sale of liquor establishments. The Hearing board found by clear and convincing evidence in Count II of the Complaint that in preparing liquor license applications the respondent failed on at least two occasions to disclose his interests in other liquor establishments, as required by subsection 12–47–129(4)(a), 5 C.R.S. (1985). The respondent also did not report the execution of a power of attorney in one of his liquor operations, in violation of subsection 12–47–106(9), 5 C.R.S. (1985). This clear and convincing evidence sustains the Disciplinary Counsel's exception to the determination by the Hearing board and Hearing panel that respondent's preparation and filing of the liquor license applications did not involve dishonesty, fraud, deceit, or misrepresentation, in violation of DR 1–102(A)(4).[2]

The respondent admits that as an attorney he is experienced in handling matters relating to the purchase, sale, and ownership of liquor establishments. The respondent's knowing failure to disclose his interests in other liquor establishments was an act involving dishonesty and misrepresentation, even though there may not have been fraudulent motive or an intent to deceive. *People v. McDowell,* 718 P.2d 541, 546 (Colo.1986). The evidence supporting the false statements in the applications for liquor licenses was not in dispute and supports the allegations in the complaint.

## DISCIPLINARY SANCTION

The hearing panel recommended a thirty-day suspension as the proper sanction. We conclude that a six-month suspension should be imposed for the respondent's violation of C.R.C.P. 241.6 and the Code of Professional of Responsibility. In addressing Count I, the hearing board concluded that the respondent failed to fully disclose his conflict of interest between JAR Associates and Topa regarding the purchase of Savanna's and concluded that the respondent violated DR5–101(A)[3] in representing Topa. Respondent failed to fully disclose his involvement with St. James and Berget, and of his conflicts of interest, and those of JAR Associates, with the complaining witness. The hearing board found that the respondent failed to advise Topa that the respondent had a mixed allegiance and that Topa could not rely on his advice.

The respondent also violated DR5–104(A).[4] The respondent and the complaining witness were in business together. The respondent had different business interests than Topa and should have limited his business relations with her. The respondent failed to insure that Topa was aware that he may not be using his professional judgment on her behalf and might be acting where there was a conflict of interest. *See People ex rel. Kent v. Denious,* 118 Colo. 342, 361–62, 196 P.2d 257, 266–67 (1948). The board also found that the re-

---

**2.** DR 1–102(A)(4) provides that "[a] lawyer shall not: ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

**3.** DR5–101(A) provides: "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

**4.** DR5–104(A) provides: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

spondent violated DR5–105(A).[5] The finding was based upon the fact that the respondent had both a personal and professional business relationship with Topa and his representation of JAR Associates involved serious conflicts of interest between Topa and JAR Associates. The multiple violations of the disciplinary rules by the respondent in and of themselves constitute grounds for disciplinary sanctions. DR1–102(A)(1) (a lawyer shall not violate a disciplinary rule).

In addition, the charges in Count II were proven by clear and convincing evidence and constitute a violation of C.R.C.P. 241.6. The hearing board found by clear and convincing evidence that the respondent violated DR1–102(A)(4)[6] by failing to list his involvement in other liquor establishments when he made application for a liquor license for a bar he was attempting to acquire for Topa. His failure to list his involvement in other liquor establishments adversely reflects on his fitness to practice law since buying and selling bars is his field of expertise. DR1–102(A)(6).

Relying on section 4.32 of the American Bar Association Standards for Imposing Lawyer Sanctions, the hearing board recommended suspension because the respondent knew or should have known of the conflict of interest and failed to disclose the possible effect of that conflict to his client resulting in her detriment. In reviewing aggravation and mitigation pursuant to section 9.2 of the standards, the hearing board found multiple offenses and a pattern of misconduct as aggravating factors. The respondent's lack of a disciplinary record and his absence of a dishonest or selfish motive were mitigating factors. Accordingly, a recommendation of suspension for thirty days was made to this court. *Compare People v. Underhill*, 683 P.2d 349 (Colo.1984) (representation of multiple parties with different interests in the sale of bars without insuring that full disclosure occurred, coupled with neglect and delay, warranted a one-year suspension) *with People v. McDowell*, 718 P.2d 541 (Colo.1986) (suspension for six months for withholding knowledge and fraud in representing both the seller and purchaser when obvious conflicts of interest existed). The hearing board, in recommending a thirty-day suspension, considered our decisions in both the *Underhill* and *McDowell* cases. Both cases had significant factual differences. In our view, the respondent's professional misconduct, which not only included his representation of Topa when there was an obvious conflict of interest but also the making of false representations in applications for liquor licenses, requires a six-month suspension.

Accordingly, we order that the respondent, Andrew M. Lopez, be suspended from the practice of the law for a period of six months effective thirty days after the date of this opinion. The respondent is ordered to comply with the provisions of C.R.C.P. 241.21 relating to the termination of all legal matters, the giving of notice to all clients and opposing counsel, and maintenance of appropriate records as proof of compliance. The respondent is also ordered to pay the cost of these proceedings in the amount of $1,499.45 and deliver that amount to the Grievance Committee at 600–17th Street, Suite 500S, Denver, Colorado 80202, within thirty days of this date.

---

**5.** DR5–105(A) provides: "A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C)."

**6.** DR 1–102(A)(4) provides: "A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."