IN RE HAROLD FREDERICK RIEBESELL, Jr., also known as Rick Riebesell; officer, director, shareholder of HFR, Inc.; formerly doing business as The Riebesell Law Firm, P.C.; member of Perigee Group LLC and Strategem Company, Chapter 7, Debtor.
W.A. JOHNSON, Jr., Plaintiff-Appellee,
v.
HAROLD FREDERICK RIEBESELL, Jr., Defendant-Appellant.
BAP No. CO-08-052, Bankr. No. 06-12914-SBB, Adv. No. 06-01913-SBB
United States Bankruptcy Appellate Panel, Tenth Circuit.
January 21, 2009.
Before BOHANON, CORNISH, and THURMAN, Bankruptcy Judges.[1]

OPINION[*]
CORNISH, Bankruptcy Judge.
Debtor Harold Frederick Riebesell appeals an order of the United States
Bankruptcy Court for the District of Colorado entering a money judgment in favor of creditor W.A. Johnson for sums loaned and determining that said judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Having reviewed the record and applicable law, we affirm the bankruptcy court's order in all respects.

I. BACKGROUND
Appellant Riebesell ("Attorney") is an attorney licensed, since 1972, to practice law in Colorado. Over the past ten years, Attorney has focused his legal practice on estate and business planning. Attorney and appellee Johnson ("Client"), a successful businessman, attended the same high school, and later lived in the same neighborhood where they socialized on occasion and their children sometimes played together.
In July 1999, Client engaged Attorney to prepare an independent contractor consulting agreement between Client and a small technology-based management consulting company, together with a related stock subscription agreement (the "Agreements"). Attorney drafted the Agreements and they were executed on October 29, 1999.[2] There was no formal termination of the parties' attorney-client relationship following execution of these Agreements, but Client had not specifically engaged Attorney to perform any further legal services.
Less than two months after the Agreements were executed, Attorney asked Client to personally loan him $90,000 for a period of one year. Attorney explained to Client that he was having a short-term cash flow problem because he was in the process of leaving one law firm and joining another. Attorney further informed Client that he was very optimistic regarding his future financial success at the new law firm and the loan would serve as a bridge between the two practices. Client agreed to make the loan, and on December 14, 1999, issued a personal check to Attorney in the requested amount (the "first loan"). In exchange, Client received Attorney's unsecured promissory note prepared with a one year term and interest at 12% per annum (the "1999 Note"). It is undisputed that Attorney failed to make any disclosures required by Rule 1.8(a) of the Colorado Rules of Professional Conduct ("CRPC") in soliciting and obtaining the loan from Client.[3]
In April of 2000, Client hired Attorney generally to create a comprehensive estate plan, and specifically to draft a family limited partnership agreement. Attorney then began preparing an operating agreement for the family partnership which was executed November 13, 2000.[4] In August of 2000, while working on this agreement, Attorney indicated to Client that his financial affairs had not gone as planned, and therefore he would not be able to repay the 1999 Note when it fell due in December. Attorney asked Client for a one year extension of time to pay and Client agreed. An unsecured substitute promissory note replacing the 1999 Note was prepared in the principal amount of $97,663.56, with a due date of January 31, 2001, and interest accruing at 12% per annum, and a default interest rate of 24% per annum (the "2000 Note").[5] Again, it is undisputed that Attorney did not make any disclosures required by CRPC Rule 1.8(a) in soliciting and obtaining the renewal and extension of this loan. No payments were ever made on the 2000 Note.
Following execution of the 2000 Note, the parties' attorney-client relationship continued. In late 2000, Client sought legal advice from Attorney regarding investing in real estate; in 2001, Client asked Attorney to draft a revised will; and in 2002, Client directed Attorney to prepare an irrevocable life insurance trust.
In December of 2002, with the 2000 Note almost a year in default, Attorney and Client entered into a business relationship. In hopes of helping Attorney earn sufficient income to repay the existing loan, Client agreed to advance Attorney $45,000 (the "second loan") to form a consulting business, Perigee Group, LLC ("Perigee"). The plan was for Perigee to office share with Attorney's new law firm, Riebesell Law Firm, PC, and for Client to provide consulting services to Perigee.[6] Client advanced $20,000 in December 2002, $10,000 in February 2003, and $15,000 in April 2003.
In exchange for these advances, on April 22, 2003, Attorney executed a new note in favor of Client in the amount of $194,303.94 ("2003 Note"). The principal amount of the 2003 Note consisted of three items: 1) $97,663.56, representing the principal amount of the 2000 Note (which extended the due date of the 1999 Note, and added accrued interest on the first loan amount of $90,000); 2) $51,640.38, representing accrued interest to date on the 2000 Note; and 3) $45,000, representing the second loan. The 2003 Note provided for a due date of January 31, 2005, together with interest at 12% per annum, and a default interest rate of 24% per annum. Again, no collateral was provided as security for the 2003 Note.
Soon thereafter, the parties' personal and business relationships soured. As a result, Client left the office space, refused to provide consulting services to Perigee, and terminated Attorney's legal representation.
Attorney defaulted on the 2003 Note. In May 2006, Client filed a collection action against Attorney in Denver District Court. Attorney filed for Chapter 7 relief on May 26, 2006. Client then filed this adversary proceeding in November 2006, seeking judgment in the principal amount of the 2003 Note, plus interest at the default rate of 24% per annum as provided therein, and also that such judgment be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).[7]
The undisputed evidence at trial was that Attorney owed Client $281,013.95 under the 2003 Note which included interest and default interest accrued as of May 1, 2006.[8] Following trial, the bankruptcy court took the matter under advisement, and on May 23, 2008, issued its "Findings of Fact, Conclusions of Law and Order" ("Order").[9] In its Order, the bankruptcy court rejected Attorney's primary defenses, which were the lack of an attorney-client relationship and lack of justifiable reliance. To the contrary, as to the first loan, the bankruptcy court found that an attorney-client relationship existed between the parties, and because of that relationship, Client justifiably dropped his guard in making the first loan to Attorney. However, as to the second loan, the bankruptcy court found a lack of justifiable reliance, stating that Client had become aware of Attorney's financial distress.[10] The bankruptcy court concluded that Client had met each element of his § 523(a)(2)(A) claim and entered judgment against Attorney for:
$281,013.95, plus interest since the date of petition filing, May 26, 2006, at 24% per annum, less $45,000.00, and attributable interest thereto. [Client] shall tender to the Court a proposed Order and Judgment calculating and confirming the total amount deemed nondischargeable consistent with this Court's ruling within ten days of the entry of this Order. Said judgment is not subject to discharge.[11]
Attorney filed a notice appealing the Order on May 29, 2008. As requested by the bankruptcy court, on May 30, 2008, Client submitted a proposed order calculating the amount of the debt deemed non-dischargeable and the post-petition interest.[12] On July 22, 2008, Attorney filed an objection to the proposed order, arguing that the bankruptcy court had no jurisdiction to enter a money judgment, and that post-judgment interest was controlled by 28 U.S.C. § 1961.[13] On July 29, 2008, the bankruptcy court held a hearing on the matter at which Attorney did not appear,[14] and then issued its "Order and Calculation of Judgment Amount" ("Judgment"), ruling that Client was entitled to the amount of $300,475.13, with interest accruing thereafter at 24% per annum, and that said judgment was non-dischargeable pursuant to 11 U.S.C. § 523 (a)(2)(A).[15]
Attorney now appeals, contending the bankruptcy court reached the correct result as to the second loan, but erred in entering judgment on the first loan and finding it non-dischargeable. Creditor has not filed any cross-appeal with respect to the second loan which the bankruptcy court found dischargeable.

II. JURISDICTION
This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[16] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have thus consented to appellate review by this Court.
A decision is considered final "if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[17] In this case, the order and judgment of the bankruptcy court terminated the adversary proceeding. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.

III. STANDARD OF REVIEW
We review the bankruptcy court's legal conclusions de novo. De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[18] We review the bankruptcy court's factual findings under the clearly erroneous standard. A factual finding is "clearly erroneous" when "`it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[19] Additionally, in reviewing findings of fact, we are compelled to give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[20]

IV. ANALYSIS
Section 523(a)(2)(A) provides:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt
(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]
At trial, Client had the burden of proving each element of his § 523(a)(2)(A) claim by a preponderance of the evidence.[21] The elements of a § 523(a)(2)(A) claim are: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on the debtor's representation; 4) the creditor's reliance was justifiable; and 5) the creditor was damaged as a proximate result.[22]
On appeal, Attorney contends the bankruptcy court erred in entering the money judgment in favor of Client and determining it to be non-dischargeable for a number of reasons: 1) the bankruptcy court is without jurisdiction to enter a money judgment in a non-dischargeability proceeding; 2) no attorney-client relationship existed between the parties when the first loan was made, therefore no disclosures were necessary under CRPC Rule 1.8; 3) even if an attorney-client relationship existed, the loan fell within the exception to CRPC Rule 1.8 for standard commercial transactions; 4) Client failed to establish Attorney's intent to deceive by a preponderance of the evidence; 5) Client failed to establish his justifiable reliance by a preponderance of the evidence; and 6) the rate of post-judgment interest is controlled by 28 U.S.C. § 1961, and not the default interest rate specified in the 2003 Note. As discussed below, we reject each of Attorney's arguments and affirm the decision of the bankruptcy court.

A. Jurisdiction to enter a money judgment
Attorney argues that under § 1334(b), the bankruptcy court lacks jurisdiction to enter a money judgment in Client's non-dischargeability adversary proceeding. Attorney cites no authority from this circuit to support his argument. Though not all bankruptcy courts and judges agree,[23] this Court and all of the circuit courts that have addressed this issue have concluded that bankruptcy courts do have jurisdiction to award money damages in non-dischargeability proceedings.[24]

B. Attorney-client relationship
In Fowler Brothers v. Young,[25] the Tenth Circuit Court of Appeals held that New Mexico Rule of Professional Conduct 16-108A created an affirmative duty for an attorney to disclose certain information to a client in connection with an unwritten construction work agreement between them, and that failure to do so constituted a "false representation" or "false pretenses" under § 523(a)(2)(A).[26] In this case, Attorney admits that he borrowed money from Client and failed to make any disclosures required by CRPC Rule 1.8(a). Attorney does not appear to contest that failure to comply with CRPC Rule 1.8 constitutes a false representation or false pretenses, but only that Rule 1.8 is inapplicable because there was no attorney-client relationship at the time the first loan was made.[27] The question of whether an attorney-client relationship exists is a factual one, reviewed for clear error.[28]
Attorney argues that no attorney-client relationship existed when the 1999 Note was executed because he had completed all legal services requested by Client approximately two months earlier. Analysis of the existence of an attorney-client relationship does not end there. Under Colorado law, the attorney-client relationship may be inferred from the conduct of the parties.[29] "The proper test is a subjective one, and an important factor is whether the client believes that the relationship existed."[30] Additionally, an attorney-client relationship is an ongoing one, giving rise to a continuing duty to the client until the client clearly understands, or reasonably should understand, that the relationship no longer exists.[31]
It is undisputed that there was no formal termination of the attorney-client relationship following execution of the Agreements in October 1999. At trial, Client testified that at the time of the first loan, he considered Attorney to be his legal representative, and expected that Attorney would make any appropriate disclosures regarding the transaction between them.[32] Moreover, Client testified that between July 1999 and March 2003, he did not employ any other attorney, except with respect to a post-divorce related agreement, and in that instance he simply permitted his original divorce attorney to handle the matter.[33] Additionally, following the original legal services provided to Client in 1999, Attorney represented Client with respect to at least four more matters: 1) preparation of an operating agreement for a family limited partnership, which was executed November 13, 2000; 2) provision of advice regarding real estate investment in late 2000; 3) revision of Client's will in 2001; and 4) preparation of an irrevocable life insurance trust in 2002. This evidence, taken as whole, sufficiently supports a conclusion that when the first loan was made, the parties had an ongoing attorney-client relationship, which gave rise to Attorney's continuing ethical duty towards Client.
Even if we were not convinced that an attorney-client relationship existed in December 1999 when the first loan was made, Attorney readily admits an attorney-client relationship existed when the 2000 Note was executed in substitution of the 1999 Note.[34] Apparently, Attorney believes that § 523(a)(2)(A) is not applicable to execution of the 2000 Note since it "did not involve new loan proceeds."[35] However, § 523(a)(2)(A) reaches not only original debt transactions, but secondary debt transactions as well; i.e., extensions, renewals, and refinancings of credit. Collectively used, these terms are broad enough to account for virtually every type of secondary debt transaction.[36] In summary, the 2000 Note was: 1) a business transaction between the parties that extended and renewed the 1999 Note; 2) admittedly transacted when an attorney-client relationship existed between the parties; and 3) transacted without Attorney making any disclosures required by CRPC Rule 1.8. Accordingly, there is ample support for the bankruptcy court's conclusion that the first element of a § 523(a)(2)(A) claim was present, i.e., that Attorney made a false representation based on the violation of his ethical duties.

C. CRPC Rule 1.8 exception for standard commercial transactions
Attorney argues that even if an attorney-client relationship existed between the parties, the loan fell within the exception to CRPC Rule 1.8 for standard commercial transactions. That exception provides:
Paragraph (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities' services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.[37]
Attorney contends Client was in the business of loaning money, thus he was not required to make the disclosures required by CRPC 1.8(a). Whether the loan between Attorney and Client was a standard commercial transaction is a factual issue, reviewed for clear error.
Attorney attempts to characterize several transactions throughout which he represented Client as "making loans;" i.e., the purchase of stock in the small technology-based management consulting company in 1999, and the real estate investment in 2000. These transactions hardly elevate Client to the position of being in the banking or brokerage business. Further, Client testified that he had never loaned money to anyone personally prior to making the loan to Attorney. Attorney's argument regarding the standard commercial transaction exception is without merit, and little more than wishful thinking.[38]

D. Intent to deceive
Attorney contends Client failed to establish by a preponderance of the evidence the "intent to deceive" element of his § 523(a)(2)(A) claim. The existence of intent to deceive is a question of fact, reviewed for clear error.[39] Because a debtor rarely admits a lack of intention to repay a debt, "such intent must be inferred by the totality of the circumstances of the case at hand."[40] The bankruptcy court may consider not only a debtor's conduct at the time of the false representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of those representations.[41] Additionally, in making a finding of intent, the demeanor and credibility of the witness plays a very large role.[42] In its Order, the bankruptcy court specifically found that Attorney "was not credible. His testimony was not believable and the documentary evidence did not support his contentions."[43]
In analyzing the intent element, the bankruptcy court found the following evidence probative:
(a) [Attorney] acknowledged wrongdoing in other similar cases;
(b) the number and nature of creditors' complaints expressed at [Attorney's] Section 341 Meeting of Creditors;
(c) the numerous former clients scheduled as creditors by [Attorney] in Schedule F of his bankruptcy case file; and
(d) in early 2004 [Attorney] transferred title to his residence, (then, recently refinanced), to his wife for the admitted purpose of shielding it from his creditors.
He also continued to borrow from a client on an unsecured basis just three months before petition filing and long after [Client] had started making demands for repayment.[44]
As to items a, b, and c above, Attorney contends the bankruptcy court erred in admitting the evidence over his hearsay and relevancy objections.[45]
A trial court's evidentiary ruling is reviewed under the abuse of discretion standard.[46] Under this standard, an appellate court should not disturb the trial court's decision unless there is "a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[47] Attorney neglects to explain the basis of his hearsay objections, and only generally supports his relevancy objections by stating that these "items of evidence are not considered probative of any of the elements required by In Re Young and do not prove intent to deceive in this specific case."[48] Attorney has clearly failed to demonstrate that the bankruptcy court abused its discretion in admitting the complained of evidence.
The primary basis Attorney gives in support of his argument that the bankruptcy court erred in inferring an intent to deceive from the totality of the circumstances is the fact that none of his other client-creditors filed nondischargeability actions. That fact in no way negates Attorney's ethical duties under the CRPC, which he is presumed to know, and the violation of which alone gives rise to serious questions.
This Court may only reverse the bankruptcy court's factual findings if they are clearly erroneous. Clearly erroneous means that after reviewing all the evidence, we must be left with the definite and firm conviction that a mistake has been made.[49] Based on the totality of the circumstances standard, we are not convinced that the bankruptcy court's finding of the requisite intent to deceive in this case was a mistake.

E. Justifiable reliance
Attorney also argues that Client failed to carry his burden of proving the "justifiable reliance" element of his § 523(a)(2)(A) claim. Justifiable reliance is a subjective standard and
does not require the creditor prove he acted consistent with ordinary care and prudence. Instead, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." A creditor is only required to make an investigation beyond the representations given where "under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived."[50]
In this case, because of the trust inherent in the attorney-client relationship, Client may have exercised a lower level of due diligence in making the loan.[51] Further, Client testified without contradiction that he trusted Attorney at the time the loan was made. And, in its Order, the bankruptcy court specifically stated that Client "was credible and the documentary evidence admitted during the trial corroborated his testimony."[52] We cannot say that the bankruptcy court's factual finding of justifiable reliance on Client's part was clearly erroneous.
Additionally, to support its finding of justifiable reliance, the bankruptcy court alternatively relied on the holding in In re Tallant.[53] In that case, the Ninth Circuit Bankruptcy Appellate Panel was presented with facts very similar to those on appeal before us now. In analyzing whether a creditor-client had met his burden of proof on the justifiable reliance element, the court concluded that reliance could be inferred from a debtor-attorney's failure to disclose material information  the conflict of interest and client's right to seek independent counsel for an unbiased opinion as to the merits of the transaction  as required by the California rules of professional conduct.[54] Allowing an inference of justifiable reliance in this context of Attorney's violation of his ethical duties to Client makes logical sense, because "[r]equiring a plaintiff to show a speculative state of facts, i.e., how he would have acted if omitted material information had been disclosed . . . would place an unnecessarily unrealistic evidentiary burden on the . . . plaintiff[.]"[55] Based on the circumstances of this case, we are satisfied that the bankruptcy court reached the right conclusion regarding justifiable reliance.

F. Post-judgment interest rate
Finally, Attorney contends the bankruptcy court erred in awarding post-judgment interest at the 2003 Note default rate of 24%, rather than the interest rate established by 28 U.S.C. § 1961. Attorney neither sets forth the applicable rate, nor supports his argument with citation to any authority.[56]
The 2000 Note, which was drafted by Attorney himself,[57] provides in part:
. . .
In the event of any default by Borrower in the payment of principal or interest when due or in the event of the suspension of actual business, insolvency, assignment for the benefit of creditors, adjudication of bankruptcy, or appointment of a receiver, of or against Borrower, the unpaid balance of the principal sum of this promissory note shall at the option of Lender become immediately due and payable and the amount then due shall accrue interest until payment at the rate of twenty-four percent (24%) per annum or the highest rate permitted by law, whichever is less.
. . .
This note is made and executed under, and is in all respects governed by, the laws of the State of Colorado.[58]
Colorado statutes provide for post-judgment interest as follows:
[C]reditors shall be allowed to receive interest on any judgment recovered before any court authorized to enter the same within this state from the date of entering said judgment until satisfaction thereof is made either:
(a) At the rate specified in a contract or instrument in writing which provides for payment of interest at a specified rate until the obligation is paid; except that if the contract or instrument provides for a variable rate, at the rate in effect under the contract or instrument on the date judgment enters; or
(b) In all other cases where no rate is specified, at the rate of eight percent per annum compounded annually.[59]
Absent any controlling authority to the contrary, and based on the particular facts of this case, we see no reason to deny Client a judgment measured by the "benefit-of-the-bargain rule." As stated by one bankruptcy court, "[t]he "benefit-of-the-bargain" in this [§ 523(a)(2)(A)] case requires that the plaintiff receive the rate of interest bargained for between the parties. Applying the contract rate of interest serves the dual policy of making the plaintiff whole as well as discouraging fraudulent conduct."[60]

V. CONCLUSION
We affirm the order of the bankruptcy court.
BOHANON, J., concurring in part.
I concur in the decision save for its holding that a bankruptcy court can enter a money judgment in a non-dischargeability proceeding. See Porter Capital Corp. v. Hamilton, 282 B.R. 22 (Bankr. W.D. Okla. 2002).
NOTES
[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[2] Agreements, in Appellee's Supp. App. at SA0080.
[3] At the applicable loan dates, CRPC Rule 1.8(a) provided:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) the client is informed that use of independent counsel may be advisable and is given a reasonable opportunity to seek the advice of such independent counsel in the transaction; and
(3) the client consents in writing thereto.
CRPC Rule 1.8(a) (1993). We note that in its opinion the bankruptcy court quoted the current version of Rule 1.8(a). The differences between the former and current versions are minor and do not impact our analysis or decision in this case.
[4] See Transcript of Proceedings Held on April 11, 2008 ("Tr.") at 14, l. 15, in Appellant's App. at 50. The family limited partnership, an estate planning device, is technically an LLC, which can elect to be taxed as a partnership. See Operating Agreement of Reverse Drury Limited Liability Company, in Appellee's Supp. App. at SA0107.
[5] See Promissory Note, in Appellee's Supp. App. at SA0029. The substitute 2000 Note capitalized the agreed upon amount of accrued interest to date on the original $90,000 loan.
[6] Attorney testified that Perigee was intended to be a "consulting platform to present mutidisciplinary services to businesses and their owners." See Tr. at 105, ll. 15-16, in Appellant's App. at 141.
[7] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.
[8] On Attorney's Schedule F, he listed an undisputed and unsecured debt to Client in the amount of $281,013.95. See Schedule F, in Appellee's Supp. App. at SA0044.
[9] Order, in Appellant's App. at 170.
[10] Id. at 12, in Appellant's App. at 181.
[11] Id. at 12-13, in Appellant's App. at 181-82.
[12] See Submission of Proposed Order and Calculation of Judgment Amount attached to Appellant's Reply Br.
[13] See Objection to Proposed Order and Calculation of Judgment Amount attached to Appellant's Reply Br.
[14] See July 29, 2008 Minutes of Proceeding attached to Appellant's Reply Br.
[15] See Judgment attached to Appellant's Reply Br.
[16] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.
[17] Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).
[18] Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991).
[19] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting LeMaire ex rel. Le Maire v. United States, 826 F.2d 949, 953 (10th Cir. 1987)).
[20] Fed. R. Bankr. P. 8013.
[21] Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996).
[22] Id. (citing Grogan v. Garner, 498 U.S. 279, 287 (1991)), as modified by Field v. Mans, 516 U.S. 59, 70 (1995). In Mans, the United States Supreme Court adopted the same test, except that the reliance standard to be used is the less stringent subjective standard of "justifiable" reliance, rather than the objective standard of "reasonable" reliance. Notwithstanding the decision of the Tenth Circuit in Young, this Court will use the justifiable reliance standard adopted by the United States Supreme Court.
[23] See In re Cambio, 353 B.R. 30 (1st Cir. BAP 2004); Lang v. Lang (In re Lang), 293 B.R. 501, 520 (10th Cir. BAP 2003) (Bohanon, J., dissenting); Porter Capital Corp. v. Hamilton (In re Hamilton), 282 B.R. 22 (Bankr. W.D. Okla. 2002) (Bohanon. J.).
[24] Lang v. Lang (In re Lang), 293 B.R. 501, 516-17 (10th Cir. BAP 2003) (collecting cases).
[25] Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996).
[26] Id. at 1374. The language of the New Mexico rule and CRPC Rule 1.8 is substantially similar. The Ninth Circuit BAP followed this decision in In re Tallant, 218 B.R. 58, 64 (9th Cir. BAP 1998).
[27] Appellant's Br. at 8. We need not address the second loan because the bankruptcy court held it was dischargeable and Client has not cross-appealed with respect to that issue. Attorney does argue that "the circumstances and situations involving each of the promissory notes demonstrate that [Client] understood, or reasonably should have understood, not to depend on the attorney-client relationship." Appellant's Br. at 13 (emphasis added). However, that statement seems to relate to the "justifiable reliance" element of Client's § 523(a)(2)(A) claim, and not the "false representation" element. Moreover, an attorney's ethical duties of disclosure exist precisely to protect clients by preventing them from depending on the relationship.
[28] Int'l Tele-Marine Corp. v. Malone & Assocs., Inc., 845 F. Supp. 1427, 1431 (D. Colo. 1994).
[29] People v. Bennett, 810 P.2d 661, 664 (Colo. 1991).
[30] Id.
[31] Id. (quoting In re Weiner, 586 P.2d 194, 197 (Ariz. 1978)).
[32] See Tr. at 26, ll. 4-8, in Appellant's App. at 62. The bankruptcy court made a specific finding that Client was credible. See Order at 6, in Appellant's App. at 175.
[33] Tr. at 20-21, ll. 23-25 and 1-9, in Appellant's App. at 56-57.
[34] Appellant's Br. at 13.
[35] Id.
[36] Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 133 (4th Cir. 1999); see also John Deere Co. v. Gerlach (In re Gerlach), 897 F.2d 1048, 1050 (10th Cir. 1990) ("not only is a new debt procured through fraud excepted from discharge, but old debt which is extended, renewed, or refinanced through fraud is also nondischargeable").
[37] CRPC Rule 1.8, Comment Transactions Between Client and Lawyer, ¶ 1.
[38] Moreover, a review of the record on appeal indicates that this argument was not made to the bankruptcy court with any specificity.
[39] In re Kennedy, 108 F.3d 1015, 1018 (9th Cir. 1997).
[40] Chevy Chase Bank FSB v. Kukuk (In re Kukuk), 225 B.R. 778, 786 (10th Cir. BAP 1998).
[41] Groetken v. Davis (In re Davis), 246 B.R. 646, 652 (10th Cir. BAP 2000), vacated in part on other grounds, In re Davis, 35 F. App'x 826 (10th Cir. 2002).
[42] Kukuk, 225 B.R. at 786.
[43] Order at 6, in Appellant's App. at 175.
[44] Id. at 12, in Appellant's App. at 181. Regarding the first item of evidence, in an action filed against him by the Disciplinary Counsel of the Colorado Supreme Court, Attorney entered a stipulation of misconduct acknowledging under oath his violation of CRPC Rule 1.8 by: "1) borrowing money from a client pursuant to terms which were not faire [sic] and reasonable to the client under the circumstances; and 2) failing to inform the client that the use of independent counsel may be advisable." See Order at 5, in Appellant's App. at 174; Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct, in Appellee's Supp. App at SA0050. With respect to the second item, the bankruptcy court took judicial notice of the transcript of the § 341 meeting and found that several other client-creditors made the effort to appear at that meeting and express their concerns. Order at 11, in Appellant's App. at 180. Regarding the third item of evidence, see Schedule F, in Appellee's Supp. App. at SA0044. For more information relating to the fourth item of evidence, see Marital Agreement, in Appellee's Supp. App. at SA0031.
[45] Appellant's Br. at 17-18
[46] United States v. Talamante, 981 F.2d 1153, 1156 (10th Cir. 1992).
[47] United States v. Ortiz, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986).
[48] Appellant's Br. at 18.
[49] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting LeMaire ex rel. Le Maire v. United States, 826 F.2d 949, 953 (10th Cir. 1987)).
[50] William W. Barney, M.D. P.C. Retirement Fund v. Perkins (In re Perkins), 298 B.R. 778, 792 (Bankr. D. Utah 2003) (quoting Field v. Mans, 516 U.S. 59, 70-71 (1995)) (footnotes omitted).
[51] See People v. Barbieri, 61 P.3d 488, 491-92 (Colo. 2000). In fact, it is likely that "the deceit was made easier and more effective" by the attorney-client relationship. See Kartchner v. Kudla (In re Kudla), 105 B.R. 985, 990 (Bankr. D. Colo. 1989).
[52] Order at 6, in Appellant's App. at 175.
[53] In re Tallant, 218 B.R. 58 (9th Cir. BAP 1998).
[54] Id. at 68-69 (citing In re Apte, 96 F.3d 1319, 1323 (9th Cir. 1996)).
[55] Id. at 68 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 245 (1988)).
[56] Federal Rule of Bankruptcy Procedure 8010(a)(1)(E) requires that argument "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."
[57] See Tr. at 71, ll. 12-14, in Appellant's App. at 107.
[58] 2000 Note, in Appellee's Supp. App. at SA0029.
[59] Colo. Rev. Stat. § 5-12-102(4)(a) (1984).
[60] Primm v. Foster (In re Foster), 38 B.R. 639, 640 (Bankr. M.D. Tenn. 1984). See also Am. Gen. Fin., Inc. v. Steinbrunner (In re Steinbrunner), 149 B.R. 484, 489 (Bankr. N.D. Ohio 1992).